1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9    KATHERENE TILLEMANS,            )
                                     )
10              Plaintiff,           )        2:12-cv-00127-PMP-RJJ
                                     )
11   vs.                             )        REPORT &  RECOMMENDATION
                                     )           OF UNITED STATES
12                                   )           MAGISTRATE JUDGE
                                     )        (Plaintiff's Motion for Reversal (#9);
13                                   )        and Defendant's Cross Motion to
     MICHAEL J. ASTRUE, COMMISSIONER )        Affirm (#16))
14   OF SOCIAL SECURITY,             )
                                     )
15              Defendant.           )

16          This matter came before the Court on Plaintiff Katherene Tillemans' Motion for Reversal

17   (#9) and Defendant Michael J. Astrue, Commissioner of Social Security's, Cross-Motion to Affirm

18   (#15).  The Court has reviewed the Plaintiff's Motion (#9), the Defendant's Opposition (#15), and

19   the Plaintiff's Reply (#17).   The Court has also reviewed the Defendant's Motion (#16), the

20   Plaintiff's Opposition (#18), and the Defendant's Reply (#22).

21                                  **BACKGROUND**

22          Plaintiff Katherene Tillemans seeks judicial review of Administrative Law Judge (ALJ)

23   James S. Carletti's March 8, 2010, decision. Motion for Reversal (#9).  That decision was affirmed

24   by the Appeals Council on December 2, 2011.  *See* Administrative Record, at 8-27 (Notice of

25   Manual Filing of Administrative Record (#5)). Tillemans is presently 44 years old and has not

26   worked since 2005. (Record at 50, 169).

27          Prior to leaving work in 2005, Tillemans worked in a banks and insurance companies  from

28   1995 to 2005, answering phones, scheduling appointments, entering data, faxing, filing, and doing

quality control. Record at 169.   From 1991 to 1993 she worked as a proof consultant at a photo studio. *Id*.

In 2000, Tillemans began seeing Dr. Steven Kozmary for knee and back pain.  Record at 383. Kozmary treated Tillemans pain with medication. *Id*. During follow up visits, Kozmary noted that Tillemans function improved. (Record at 287-326).  However, by March 2005, Tillemans believed her pain was so severe she could no longer work.  (Record at 168).  She reported to Kozmary that she had ceased "most all activities" due to pain. (Record at 286).   Tillemans stopped working in March 2005.  (Record at 168).

In October 2006, Tillemans applied for disability insurance benefits. (Record at 140).  She cited back problems, knee problems, high blood pressure, and depression as her reasons for claiming disability. (Record at 168).  On February 5, 2007, the Social Security Social Security Administration determined Tillemans was not disabled because her condition was not severe enough to prevent her from working. (Record at 55-58). Tillemans filed for reconsideration, but the Social Security Administration affirmed its original decision. (Record 66-64).

Next, Tillemans requested a hearing, which was held on December 4, 2009. (Record at 11-23).  At the hearing, Tillemans, who was represented by counsel, and a vocational expert testified. (Record at 28-49).  On March 8, 2010, the ALJ issued a decision finding that  Tilleman was not disabled. (Record at 11-23).  Tillemans requested a review, but on March 14, 2012, the Appeals Counsel denied her request.  (Record at 1-3).  The ALJ's Decision became the final decision of the Commissioner of Social Security. (Record at 1).

Tillemans has now appealed to this Court requesting a reversal of the ALJ and Commissioner's decision.  She asserts that reversal is appropriate for the following reasons: (1) the ALJ did not adequately weigh the opinion of the her treating doctor; (2) the ALJ improperly assessed her credibility; (3) the ALJ improperly failed to analyze Listing 12.05C for mental retardation; (4) the ALJ improperly rejected lay witness testimony;  (5) the ALJ improperly evaluated her obesity; and (6) the ALJ relied on flawed vocational evidence.

Tillemans asserts that she is disabled due to arthritis pain in her knees, disc degeneration/disruption of the lower spine, hypertension, morbid obesity, diabetes, anxiety,

depression, other mental disorders, and side effects from her medication, including headaches. Motion for Reversal (#9) at 2.

**I.     Summary of Medical Evidence**

     A.     Dr. Kozmary's Notes

     Tillemans began seeing Dr. Kozmary for knee and back pain in 2000. (Record at 383). At that time she weighed around 318 pounds, smoked "less than one pack" a day, and consumed four or five caffeinated beverages a day. (Record at 385). She visited Kozmary regularly for follow up evaluations and medication refills through 2006. (Record at 295-377). By 2005, she had been diagnosed with arthritis pain of the knee and disc degeneration/disruption. (Record at 287). She had been prescribed Lortab, Hydrochlorothiazide, Flexeril, Neurontin, Celexa, Ms-Contin, and Ambien. *Id*. Kozmary's notes from all of Tillemans visits in 2005 indicate that her pain was moderately well controlled on her medication regimen, she was functioning well, and her pain and functioning levels had both improved with the medication. (Record at 287, 290, 293, 296, 299). Additionally, Tillemans walked unaided and had a normal gait. (Record at 286).

     However, Kozmary also noted that on the Oswestry Disability Index[1] (ODI) she ranged from 34 to 39, which indicates complete disability. (Record at 287, 290, 293, 296, 299). Additionally, Tillemans reported that she had stopped almost all activity due to her pain. (Record at 286). Tillemans described her pain to Kozmary as constant, burning, heavy, sharp, tingling, throbbing, annoying, tiring, shooting, stabbing, dull ache, cruel, and exhausting. (Record at 300). Her pain was exacerbated by standing, lying, twisting, bending, coughing, sitting, walking, and running, (Record at 286). Kozmary suggested intra-articular injections with Haylagan in addition to her prescribed medication. (Record at 415).

     B.     Independent Internal Medicine Evaluation by Steven Gerson, D.O.

     On or around January 17, 2007, Dr. Steven Gerson examined Tillemans for an Internal

---

[1] This is a patient-completed questionnaire which gives a subjective percentage score of level of function (disability) in activities of daily living in those rehabilitating from low back pain. The ODI has been published in four formats. Certain formats are recommended more than others. SPINE Vol. 25, No. 22, pp 2940–2953, ©2000, Lippincott Williams & Wilkins, Inc. (http://www.asipp.org/reference/30Fairbank.pdf). Kozmary did not indicate in his notes which ODI format he used. (Record at 287, 290, 293, 296, 299).

Medicine Assessment of Alleged Disability. (Record at 426). He reported that Tillemans weighed 326 pounds, she had full range of motion in all her joints except her knees, and she did not require any assistive devises. (Record at 429). She had difficulty getting on and off the examination table, tandem walking, walking on toes and heels, and squatting and rising. *Id*. Dr. Gerson also reported that Tillemans was able to lift or carry fifteen pounds occasionally and ten pounds frequently; she could stand and walk for 2 hours and sit for 6 hours in an 8 hour workday; she could occasionally climb stairs or ramps and balance; she could not stoop, kneel, crouch, or crawl; and finally, her reaching was limited and she should avoid moving machinery and extreme temperatures. (Record at 425-432).

C.      Psychological Evaluation by Joseph D. White, Ph.D.

On January 9, 2008, Tillemans was seen by Joseph D. White, Ph.D, for a clinical psychological consultive evaluation. (Record at 465). He reported that Tillemans' speech was fluent, her thought processes were coherent, and she was oriented as to the place, time, and purpose of the assessment. (Record at 469). He determined her full scale IQ was 69 and she was functioning in the borderline to mentally impaired range of intelligence. (Record at 470-472). Additionally, he reported that she could likely understand, remember, and carry out simple, 1 or 2 step directions. (Record at 472). He referred her to Southern Nevada Adult Mental Health Services (SNAMHS) for treatment of anxiety and depressed mood. (Record at 473).

White also made several observations relating to Tillemans' physical appearance and pain. He noted that Tillemans was severely overweight and she vocalized her pain throughout the examination. (Record at 469). He noted that it was unclear to what degree psychological factors might contribute to her pain perception. (Record at 472). He further reported that her pain could make it somewhat difficult to maintain workplace relationships, attendance, and performance. *Id*. Based in his perception of her pain, he urged further medical commentary, but opined that it was unlikely that she could work until her medical condition was better controlled. (Record at 473).

D.      Consultative Examination by Rito B. Maningo, M.D.

On February 11, 2008, Rito B. Maningo, M.D. conducted a consultative physical examination of Tillemans. (Record at 494). He reported that she had no difficulty getting on and off the

examination table, mild difficulty tandem walking, moderate difficulty walking on toes and heels and squatting and rising, and she did not need to use assistive devises. (Record at 497). He opined that she could lift 20 pounds occasionally and 10 pounds frequently. (Record at 501). Additionally, he indicated that she could stand for at least 2 hours in an 8 hour work day and sit for 6 hours or more in an 8 hour work day. *Id*. He noted that she was extremely obese, weighing 346 pounds. (Record at 496).

    E.    <u>Progress Notes from SNAMHS</u>

Tillemans had a psychological evaluation at SNAMHS on September 4, 2009. (Record at 522). She was diagnosed with major depressive disorder, characterized as recurrent and severe without psychotic features. *Id*. She was diagnosed with generalized anxiety disorder and obesity with chronic pain. (Record at 523). Her Global Assessment Functioning (GAF) was measured at 55.[2] *Id*.

**II.    Summary of Hearing Testimony and Function Reports**

    A.    <u>Testimony of Katherene Tillemans</u>

On the date of the hearing, Tillemans was 44 years old, 5 feet 7 inches tall, and weighed about 305 pounds. (Record at 31, 33). She stated that she left work in 2005 due to her medical problems and she has since lived off the support of her mother and food stamps. (Record at 32). She indicated that she never cooks or cleans, but occasionally grocery shops and drives. (Record at 32-33). When asked about her medication, she explained that she took blood pressure medication which caused headaches, nausea, stomach pain, and dizziness. (Record at 34). She also took pain medication, had injections for pain, and went to a chiropractor for her pain. (Record at 35). On a scale of 1 to 10, she rated her pain level at a 9. (Record at 39). She never had surgery on either her back or her knees, at least partially due to her lack of insurance. (Record at 35). She reported to be in constant pain. *Id*.

---

[2]Global Assessment Functioning (GAF) represents the examiner's judgement of the individual's overall level of psychological functioning. *See* American Psychiatric Association <u>Diagnostic & Statistical Manual of Mental Disorders</u> 32 (4th ed. 2000) (<u>DSM-IV</u>). A GAF of 55 [51-60] indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* American Psychiatric Association <u>Diagnostic & Statistical Manual of Mental Disorders</u> (4th ed. 2000) (<u>DSM-IV</u>).

1    In addition to her pain, she described neck problems, a "knot" in her hip, difficulty sitting,

2    and her recent diabetes diagnosis. (Record at 36-38). She also reported recently losing "a good 50

3    pounds." (Record at 38). However, she could not explain the weight loss because she was making

4    no effort to lose weight. *Id*.    She reported that she never used a cane, but she always used a

5    wheelchair at the store if one was available. (Record at 39). She spent her days napping and

6    watching television. (Record at 41-42). She was able to get up to use the bathroom. *Id*.

7           B.    <u>Testimony of Vocational Expert Dr. Cummings</u>

8    Dr. Cummings, a vocational expert, testified at the hearing. (Record at 44). He testified that

9    Tillemans past relevant work activities were considered sedentary, semiskilled, with a Specific

10   Vocational Preparation (SVP) of 4. *Id*. According to Cummings, there are 2,000 "inspector" jobs

11   in Nevada and 460,000 nationally, which are classified as unskilled, and have an SVP of 2. (Record

12   at 47). There are 1,000 assembly jobs in Nevada and 90,000 nationally with an SVP of 2. *Id*.

13   Finally, there are 1,000 sorter jobs in Nevada and 100,000 nationally with an SVP of 2. *Id*. With

14   any of these jobs, a worker would have to be able to sustain a 40 hour work week. (Record at 47).

15          C.    <u>Third-Party Adult Function Report by Robert Hodge</u>

16   Robert Hodges, a friend of Tillemans, filled out a Third Party Adult Function Report on

17   November 11, 2006. (Record at 182). Hodge reported that he had known Tillemans for 34 years

18   and at the time he filled out the report she was staying with him. I*d*. He indicated that their daily

19   activities consisted of watching television, eating, napping, and sleeping. *Id*. However, Tillemans

20   had trouble sleeping due to her pain. *Id*. He noted that Tillemans had no problem dressing, bathing,

21   or caring for her personal hygiene. (Record at 183). Tillemans typically did not prepare her own

22   meals, but she occasionally poured her own cereal for breakfast. (Record at 184). However, this was

23   not a change in her activities, because she "never really cooked" before her pain began. *Id*. He

24   reported that she only left the apartment twice a week, but she was able to drive, ride in cars, and go

25   out alone. (Record at 186). She would go shopping for music, snacks, and clothing once a month

26   for maybe 30 minutes and she would rest a lot. *Id*. Concerning Tillemans abilities, Hodges reported

27   that her pain affects her ability to lift, squat, bend, stand, reach, walk, kneel, and climb stairs.

28   (Record at 187). He did not indicate that her pain affected her ability to sit. *Id*. Additionally, he

1  reported that she had little or no problems following instructions or dealing with authority figures,

2  stress, or change in routine.  (Record at 187-188).

3          D.      Adult Function Report by Tillemans

4          Tillemans filled out an Adult Function Report on November 6, 2011.  (Record at 190).  She

5  listed many of the same limitations as she reported to Kozmary and her other examining doctors.

6  (Record at 190-197).  She noted that she takes care of her own personal care, but she does it slowly

7  and carefully.  (Record at 190).  She said she did not cook due to her pain.  (Record at 192).

8  However, she was able to do laundry twice a week for about 2 hours. *Id*.  She was also able to drive

9  and ride in a car and could go out alone.  (Record at 193).  She would go shopping for food once a

10 week for 20 minutes to 2 hours. *Id*.  Most of her time was spent napping and watching television.

11 (Record at 194).  Her pain affected her ability to lift, squat, bend, stand, reach, walk, kneel, climb

12 stairs, sit, and complete tasks.  (Record at 195).  Finally, she reported that she had no problem

13 following instructions or dealing with authority figures, but she did not handle stress or changes in

14 routine well.  (Record at 187-188).

15                                        **DISCUSSION**

16 **I.      Standard of Review**

17         A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's

18 decision, as a whole, is supported by substantial evidence, and (2) whether the ALJ applied proper

19 legal standards. 42 U.S.C § 405(g).  The Court must look to the record as a whole and consider

20 adverse and supporting evidence. *Penny v. Sullivan*, 981 F.2d 953, 956 (9th Cir. 1992). Substantial

21 evidence is more than a mere scintilla but less than a preponderance. *Tackett v. Apfel*, 180 F.3d 1094,

22 1098 (9th Cir. 1999). Thus, if evidence is susceptible to more than one rational interpretation, the

23 ALJ's decision must be upheld. *Burch v. Barnhart*, 400 F3d 676, 679 (9th Cir, 2005).

24 **II.     Whether the ALJ's Decision is Supported by Substantial Evidence**

25         Social Security disability claims are evaluated using a five-step sequential evaluation

26 procedure. 20 C.F.R § 404.1520(b); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The

27 claimant carries the burden with respect to steps one though four. *Tackett*, 180 F.3d at 1098.  If a

28 claimant is found to be disabled or not disabled, at any point during the evaluation, then no further

assessment is necessary. 20 C.F.R § 404.1520(a).  At step one, the ALJ determines if the claimant is working and if so, whether the work is substantial gainful activity. 20 C.F.R § 404.1520(b). If the claimant is engaging in substantial gainful activity, the claimant is not considered disabled. *Id*. At step two, the ALJ determines if the claimant's impairment is severe. 20 C.F.R. § 404.1520(c). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). At step three, the claimant's impairment must meet or equal one of the impairments listed in 20 C.F.R. pt. 404, subpt. P.  App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment in App. 1. 20 C.F.R. § 404.1520(d). If the claimant's impairment does not equal or meet a listed impairment, the fourth step is to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(e). If the claimant can engage in past relevant work, then no disability exists. *Id*. If the claimant cannot perform past relevant work, the Commissioner has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. 20 C.F.R. § 404.1520(f).  If it is not demonstrated that the claimant can perform other kinds of work, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a).

In the instant case, there is no dispute concerning the ALJ's findings at step one, step two and step four. At step one, the ALJ found that Tillemans had not engaged in substantial gainful activity from her alleged onset date of March 18, 2005. (Record at 13).  At step two, the ALJ found that Tillemans had the following severe impairments: right knee degenerative joint disease, hypertension, obesity, anxiety, and depressive disorder. *Id*.  At step four, the ALJ found that Tillemans was unable to perform past relevant work as an office worker. (Record at 21).

The parties disagree regarding the ALJ's findings and conclusions at step three and step five of the analysis.  At step three, the ALJ found that Tillemans did not have an impairment that met or equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P.  App. 1. (Record at 14). Tillemans claims that the ALJ did not properly select and evaluate evidence when comparing her impairments to the impairment listings 12.04 for Affective Disorders and 12.06 for Anxiety. 20 C.F.R. pt. 404, subpt. P. App. 1. Tillemans argues: (1) the ALJ did not adequately weigh the opinion of the her treating doctor, Dr. Kozmary; (2) the ALJ improperly assessed her credibility; (3) the ALJ

1   improperly failed to find that she met Listing 12.05(c) for mental retardation; (4) the ALJ improperly

2   rejected the lay witness testimony in Robert Hodge's Third Party Adult Function Report; and (5) the

3   ALJ improperly evaluated her obesity.

4          At step five, Tillemans asserts that the ALJ relied on flawed vocational evidence. The ALJ

5   found that jobs existed in significant numbers in the national economy which Tillemans could have

6   performed. (Record at 22). The ALJ relied on the testimony of a vocational expert, Dr. Cummings.

7   He asked the vocational expert a hypothetical question regarding the employment possibilities for

8   someone with Tillemans' vocational profile and the vocational expert concluded that there were

9   2,000 inspector jobs, 1,200 assembler jobs, and 1,000 sorter jobs in the Nevada regional economy.

10   (Record at 22). Nationally there were 46,000 inspector jobs, 90,000 assembler jobs, and 100,000

11   sorter jobs. Tillemans claims that the vocational expert's testimony was defective because he did not

12   account for her testimony regarding her impairments when determining if she could perform other

13   kinds of work. Motion for Reversal (#9) at 22.

14       **A.**    **Evaluation of Medical Evidence**

15          Tillemans argues that the ALJ did not accord adequate weight to the opinion and assessment

16   of her treating physician, Dr. Steven Kozmary. Although the ALJ discussed Kozmary's opinions

17   and assessments in great detail, Tillemans believes the ALJ improperly discounted Kozmary's

18   opinion that Tillemans was "totally and permanently disabled." Motion to Reverst (#9) at 15, citing

19   (Record at 19). The ALJ reasoned that "[s]uch issues are reserved to the Commissioner." (Record

20   at 19), citing 20 CRF 404.1527(d)(2), and Social Security Ruling 96-5p.

21          Whether a claimant meets the statutory definition of disability is an opinion reserved to the

22   Commissioner. 20 C.F.R. § 404.1527(e), 416.927(e). Statements that a claimant is disabled are not

23   given controlling weight or "special significance" because that "would, in effect, confer upon the

24   treating source the authority to make the determination or decision about whether an individual is

25   under disability, and thus would be an abduction of the Commissioner's statutory responsibility to

26   determine whether an individual is disabled." See SSR 96-5, 1996 WL 374183, at *2; 20 C.F.R. §

27   404.1527, 416.927. Here, therefore, the ALJ was correct to note that Kozmary's opinion that

28   Tillemans was disabled, was a determination reserved to the commissioner.

1   Nevertheless, an ALJ "must always carefully consider medical source opinions about any

2   issue, including opinions about issues reserved to the Commissioner."   See SSR 96-5, 1996 WL

3   374183, at *2. Here, the ALJ did just that.   The ALJ observed that Kozmary's opinion was not

4   supported by the record. (Record at 19).   Specifically, the ALJ noted that Kozmary's own notes

5   conflicted with this opinion.   *Id*.   Kozmary's notes repeatedly assert that Tillemans "continued to be

6   active at home," she was "functioning well," and her functioning improved with medication.

7   (Record at 17, 19, 248, 254, 258, 260-61, 263, 266, 272, 275, 271, 281, 284, 287, 290, 293).

8   Additionally, Kozmary's opinion that Tillemans was totally disabled was based on the ODI,

9   which is a subjective percentage score of level of function based on a patient completed

10   questionnaire.   *Id*.   Thus, this opinion was based on Tillemans own description of her pain - a factor

11   the ALJ discussed in great detail in making his determination. (Record at 16-21).

12   Finally, the ALJ relied on the opinions of the consultative examining physicians, and the

13   opinions of State agency reviewing doctors to make his determination. (Record at 16-21).   The four

14   examining physicians opinions supported the ALJ's determination.   *Id*. Additionally, an ALJ may

15   rely on the opinions of State agency reviewers if those opinions are well supported and consistent

16   with the record as a whole.   20 C.F.R. § 404.1527(f), 416.927(f).   Here, the opinions of the State

17   agency reviewers are consistent with those of the examining physicians and the record as a whole.

18   The State agency reviewers' reports, the examining physicians' notes, and the record as a whole

19   reflect that Tillemans did not need assistive deices, she could follow insturctions, she could lift small

20   amounts of weight, and she could sit for 6 hours and stand for 2 hours of a 8 hour workday. (Record

21   at 425-432, 472, 497-501).   Therefore, the ALJ did not error in his evaluation of the medical

22   evidence.

23   **B.   Credibility Determination**

24   Tillemans argues that the ALJ's decision does not contain a proper credibility analysis of her

25   testimony. (Motion for Reversal (#9), at 18-19). An ALJ is required to make specific credibility

26   findings. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).   The ALJ's credibility finding

27   must be supported by the record and sufficiently specific to assure a reviewing court that the ALJ

28   did not arbitrarily reject a claimant's subjective testimony.   *Bunnell v. Sullivan,* 947 F.2d 341, 345-

346 (9th Cir. 1995).  Testimony may not be entirely discounted simply because there was a lack of objective finding.  *Rashah v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  However, an ALJ is permitted to consider ordinary techniques for credibility evaluation, *See Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); and to make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Burnell*, 947 F.2d at 344. If there is objective medical evidence of an impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *Id.* at 345-347.  Some factors the ALJ may also consider are: (1) the claimant's reputation for truthfulness; (2) inconsistencies in testimony or between testimony and conduct; (3) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (4) the claimant's daily activities.  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Charter*, 80 F.3d 1273, 1284 ((th Cir. 1996).

Here, the ALJ found that Tillemans' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms" were not credible. (Record at 17).  The ALJ specifically rejected Tillemans' claim that she was unable to perform any work activities. *Id.*  The ALJ noted that the objective findings of the medical record as well as her daily activities did not show that Tilemans was limited to the extent alleged. (Record at 18).

The ALJ's analysis fist compared Tillemans testimony to the medical evidence. (Record at 17).  He rejected her testimony about the intensity, persistence, and limiting effects of her symptoms because it conflicted with the findings of the examining and reviewing doctors. *Id.* For example, the ALJ noted that medical evidence showed that Tillemans had full range of motion in all her joints except her knees, she did not require assistive devices to walk, she showed no difficulty getting on and off the examination table, and showed only mild difficulty with tandem walking. *Id.*  The ALJ compared these findings, among others, with Tillemans allegations of pain, and found that the allegations were out of proportion with the record. (Record at 18).

1    Next, the ALJ discussed Tillemans' obesity.  *Id*.  He noted that, based on the record,

2    Tillemans obesity did not limit her ability to perform gross or fine movements, routine movements,

3    or necessary physical activity in an ordinary work environment.  *Id*.  These findings, the ALJ

4    determined, were not consistent with the assertion that Tillemans could not perform work activities.

5    *Id*.

6    Finally, the ALJ considered Tillemans' activities.  *Id*.  He found that the "described daily

7    activities . . . are not limited to the extent one would expect, given the complaints of disabling

8    symptoms and limitations." *Id*.  Rather, "[t]he evidence suggests that the claimant [had] the ability

9    to care for herself and maintain her home. . . . [which] is not inconsistent with the performance of

10   many basic work activities." (Record at 18-19).  The ALJ considered the fact that Tillemans could

11   do laundry, shop for food for up to two hours, drive, and watch television. (Record at 15).

12   Additionally, the medical evidence indicated that she could lift up to 10 pounds, sit at least 6 hours

13   and stand for 2 hours of an 8 hour work day.  (Record at 16).

14   Tillemans contends that the ALJ erred because he used piecemeal evidence and, in short, did

15   not interpret the evidence more favorably for Tillemans. Motion for Reversal (#9) at 19-20.   An

16   ALJ's interpretation of evidence will be upheld so long as it is rational, even if "the evidence is

17   susceptible to more than one rational interpretation."  *Burch*, 400 F.3d at 679.   Here, the ALJ

18   rationally interpreted the evidence.  He looked at the record as a whole and determined that

19   Tillemans allegations of pain and an inability to work were not consistent with the medical findings,

20   nor her daily activities. Thus, the ALJ did not error because the credibility findings were sufficiently

21   specific and supported by the record. The Court finds that the ALJ applied proper legal standards for

22   evaluating Tillemans' allegations regarding her degree of limitations and her ability to work.

23   **C.      Listing 12.05(C)**

24   Tillemans asserts that the ALJ erred by not considering Listing 12.05(C) in making his

25   determination.  Motion for Reversal(#9) at 20.  Listing 12.05(C) sets forth the criteria for mental

26   retardation.  20 C.F.R. pt. 404, subpt. P.  App. 1, 12.05(C).  A threshold requirement for satisfying

27   Listing 12.05(C) is onset of mental retardation prior to age 22. *Id*.  Tillemans argues that the record

28   supports a finding that she was impaired before the age of 22.  Motion for Reversal (#9) at 21. She

1   points to the fact that she attended one year of special education classes and her assessed full scale

2   IQ of 69.  *Id.*  However, the record also shows that Tillemans, after the age of 22, was able to

3   perform general office work, provide clear and appropriate answers to questions, and cognitively

4   function without issue.  (Record at 15, 32, 41).  Tillemans, as the claimant, has the burden to prove

5   that she equals a listing.  See *Lewis v. Apfel*, 232 F.3d 503, 514 (9th Cir. 2001).  An IQ assessment

6   made after the age of 40 and one year in special education classes alone, in light of the entire record,

7   is not sufficient evidence to show that Tillmans was mentally impaired before the age of 22.

8   Accordingly, the ALJ did not commit error by not analyzing Listing 12.05(C).

9           **D.    Robert Hodge's Third-Party Adult Function Report**

10          Tillemans claims that the ALJ improperly rejected the third-party report of Tillemans' friend,

11  Robert Hodge. The ALJ rejected the portions of Hodge's report which contained opinions relating

12  to Tillemans' residual functioning capacity.  (Record at 19). Specifically, the ALJ rejected Hodge's

13  opinion that Tillemans could only walk 5-7 feet before she needed to rest 5-10 minutes.  *Id*. An ALJ

14  may reject the testimony of lay witnesses if the ALJ "give[s] germane reasons" for doing so.  *Bayliss*

15  *v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)(citing *Lewis,* 232 F.3d at 511).  Here, the ALJ gave

16  a germane reasons for rejecting Hodge's testimony.  He noted that he rejected Hodge's opinion

17  because Hodge lacked any expertise in medicine or Social Security matters. (Record at 19). The

18  distance Tillemans could walk and her need for breaks was evaluated by physicians and persons

19  trained in making such determinations. (Record at 425-432, 494-501).  Therefore, rejecting Hodge's

20  lay opinion relating to Tillemans' residual functioning capacity, in favor of the medical

21  professionals's opinions, was both germane and appropriate.

22          The ALJ did not discuss the remainder of Hodge's Third-Party Adult Function Report.

23  However, the ALJ is not required to discuss every piece of evidence in the record. *See Howard v.*

24  *Barnhart*, 341 F.3d 1006, 1010 (9th Cir. 2003).  Nor is the ALJ required to discuss lay witness

25  statements that are neither significant nor probative. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006

26  fn. 6 (9th Cir. 2005) ("Because the testimony of the lay witnesses encompassed only symptoms, any

27  failure of the ALJ to adequately address that testimony does not affect the outcome of the case").

28  Here, Hodge's report was simply a description of Tillemans symptoms and added no new

1    information for the ALJ to consider. (Record at 182-188).  The only inconsistency between Hodge's

2    report and Tillemans' own description of her pain, is that Hodge stated Tillemans' pain did not affect

3    her ability to sit. (Record at 187).  Had the ALJ discussed this, it would not have been favorable to

4    Tillemans. Accordingly, the Court finds that the failure of the ALJ to give weight to Hodge's third-

5    party report does not affect the outcome of this case.

6          **E.     Evaluation of Tillemans' Obesity**

7          Tillemans contends that the ALJ did not adequately consider her obesity.  She argues that the

8    ALJ looked at it in isolation, but he should have looked at it as a symptom or factor in evaluating

9    her Residual Functioning Capacity. Motion to Reverse (#9) at 13.  An ALJ must consider the

10   combined effects of all the claimant's symptoms, severe and non severe alike.  See 20 C.F.R. §

11   404.1545, 416.945.  Here, the ALJ evaluated Tillemans obesity at length. (Record at 18).  In addition

12   to mentioning it throughout the report, an entire paragraph of the opinion is dedicated solely to

13   Tillemans' obesity and how it affects her functioning. *Id*.  The ALJ describes the symptoms of her

14   obesity, as well as the symptoms that do not accompany her obesity. *Id*. He concludes that her

15   obesity "combined with her severe impairments does not prevent her from performing all work

16   activities." *Id*. Thus, the ALJ did analyze Tillemans' obesity as a significant factor in his analysis of

17   her functioning. Accordingly, the Court finds the ALJ more than adequately addressed and

18   considered Tillemans' obesity in his decision.

19         **F.     Vocational Expert's Testimony**

20         Tillemans asserts that the vocational evidence is flawed because the ALJ should have

21   included Tillemans' manifestations of her impairment in the hypothetical question asked to the

22   vocational expert.  Motion for Reversal (#9) at 22.

23         An ALJ asks vocational experts hypothetical questions based on medical assumptions

24   supported by substantial evidence in the record reflecting the claimant's limitations.  *See Roberts v.*

25   *Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  A vocational expert's testimony is reliable if the

26   hypothetical includes all of the physical limitations supported by the record. *Thomas v. Barnhart*,

27   278 F.3d 947, 956 (9th Cir. 2002). However, an ALJ "is free to accept or reject restrictions in a

28   hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d

967, 973 (9th Cir. 2006)(citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001)).

Here, the ALJ asked the vocational expert to assume that a worker of Tillemans' vocational profile could perform work, except such work had to be limited to simple repetitive tasks, either due to pain or medications or emotional conditions, in a non-public work environment with minimal interaction with co-workers and supervisors. (Record at 46). Tillemans asserts that this hypothetical was flawed because the ALJ erroneously omitted symptoms of Tillemans' pain, including that she could not sit for a period of time and required daily naps. However, The ALJ's hypothetical contained all of the limitations that the ALJ found credible and that were supported by substantial evidence in the record. For example, the record indicates that Tillemans is capable of sitting for 6 hours and standing for 2 hours in an 8 hour work day. (Record at 425-432, 501). Accordingly, the hypothetical was not flawed.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the Plaintiff's Motion for Reversal (#9) be **DENIED**.

IT IS RECOMMENDATION of the undersigned Magistrate Judge that the Defendant's Cross-Motion to Affirm (#16) be **GRANTED**.

**NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court on or before December 4, 2012.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this  20th  day of November, 2012.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge

- 16 -